The first case on the call of the docket this morning is Agenda No. 9, Case No. 126435, People of the State of Illinois v. Lavelle D. Davis. Mr. Bart Beals. Good morning, Your Honor. Good morning. To please the Court, is it okay if I remove my mask? Yes, you can. To please the Court, again, my name is Bart Beals. I'm the attorney for the appellant Lavelle Davis. Your Honor, I would like to begin my argument. There were several points that were made in the briefs, but I would like to begin my argument in discussing why the Third District misapplied the People v. Gervaisi case. Now, as I'm sure the Court is already aware of the facts, but just to briefly illuminate a few of the facts in the instant case, in the instant case, my client was effectively minding his own business, and the State, in investigating another individual, received authorization to do an undercover drug buy. The confluence informant for the State went in attempting to meet another individual that had nothing to do with my client at a location near my client. And upon not finding that individual, the confluence informant took it upon himself to randomly approach my client and start asking my client about a drug deal, while understanding that this confluence informant understood that the recordings and the interactions, the conversation and the interactions were being recorded, audio and video recorded. Now, as I'm sure the Court is aware, recording someone's conversation without their permission is a felony in the State of Illinois under the Illinois eavesdropping statute. Now, there's an exemption that's given to law enforcement in certain instances, particularly instances involving potential illegal drug transactions. But under the Illinois eavesdropping statute, there are certain requirements that must be met in order for the law enforcement agency and, in this case, an actor for the law enforcement agency, a confluence informant, to be able to legally eavesdrop. Now, in this situation, in my client's instance case situation, it is significantly different from the Gervasey case. And the main difference is independent investigation. With my client, there was no independent investigation. The confluence informant, the law enforcement agency, they didn't know my client's name. They didn't know of my client's existence. My client was not the target of the investigation. There were no previous conversations, arrangements made prior to the eavesdropping. No independent investigation whatsoever. In the Gervasey case, you had the defendant that actually had conversations with the police officers prior to the conversation that was recorded by court reporters. Court reporters listened in on a conversation with these officers and the defendant. Now, the officers that had previous conversations with the defendant, that's how the officers knew to set up a situation where the conversation could be recorded by the court reporters and then transcribed by the court reporters. There were more than just conversations. There were over 20 conversations initiated by the defendant in Gervasey, correct? That's correct. That's correct, Your Honor. So there was an independent, it was an actual independent investigation, ongoing investigation. This was not, in the Gervasey case, this was not a, the defendant was not randomly selected by law enforcement or by government to just eavesdrop on their conversation. There was a legitimate basis to believe that a potential crime had been committed or was being committed, and therefore a legitimate basis to look for additional evidence of, in this case, the defendant in the Gervasey case, committing a crime or incriminating himself. So when the officers had the conversation, the conversation was recorded, the conversation based on the recording, the court reporters transcribed the conversation. The defendant in that case moved to suppress the conversations of the officers, the conversation, I mean, the testimony of the officers, the testimony of the court reporters, and the transcripts from the court reporters. The trial court suppressed everything, but by the time it reached this court, this court ruled that because of the police officers, similar in people, the Porcello, I do apologize if I'm mispronouncing the name, since the police officers in that case had independent conversations prior to the recorded conversation, the police officers' testimony was not recorded. Because there was an independent source. And, however, the court reporters, they were not a part of that investigation. They didn't have prior conversations with the defendant in that case. And so the court reporters, I mean, testimony by the court reporters or the transcripts were suppressed by the court reporters. In the instant case, my client is more similar to the court reporter situation. There were no previous conversations with my client. There was no independent investigation regarding my client. In the process of recording the actual, it was an auto video recording. It was not two separate recordings. It wasn't as if it was a device that was recording the audio and a device that was recording the video. Both, it was a single device doing a video recording along with the audio recording. During the process of that recording, the law enforcement found out, you know, my client's name, found out if my client was actually interested in being involved in a drug transaction. All of that happened simultaneous with the eavesdropping. And as I mentioned before, there were no previous conversations. My client's situation is the exact same situation as the court reporter situation in the Gervaisi case. So the appellate court misapplied the Gervaisi case in the instant case situation. The proper application of the Gervaisi case in this instant case would be to suppress the video as well as the confidential informant's testimony, similar to the court reporters in the Gervaisi case. Now, I'd also, if it pleases the court, I would like to move. Were you talking about the simultaneous nature of the recording, but didn't the majority in this case use that simultaneous nature of the recording actually against your argument? Yes, they did. The majority in that situation, and that's part of the reason why I was saying that the majority misapplied the Gervaisi case. Because in the way the majority applied the simultaneous recording, one, that goes against the actual purpose, the expressed purpose of the actual statute in looking at the incorporation of the fruit of the poisonous tree doctrine being incorporated in the statute. And the statute specifically stating all evidence obtained during the violation of the statute for that evidence to be suppressed. So in this situation, the third district appellate court created a different standard than what was created in Gervaisi in looking, in ruling that because the recording, it was simultaneous recording of the audio, video, and the informant information for the basis for the informant's testimony, that somehow that didn't correspond to the Gervaisi case. It didn't constitute fruit of the poisonous tree, or it was free of the initial legal taint. But in looking at the case law with Gervaisi, with Porcelli, I hope I'm not mispronouncing it too badly. In looking at those stream of cases, it's clear that when there's a violation, in this case of the statute or the Constitution, when there's a violation, if based on the violation, evidence is obtained, then that evidence is supposed to be suppressed. If there is an independent source, meaning if, yes, there may have been a violation, but the investigation was already ongoing, and it's not as if the gravamen of the evidence was obtained based on violating the statute or the Constitution. In this case, it's the statute, the Illinois eavesdropping statute, then that evidence, the evidence where there was already an independent source, an independent investigation was going on, that evidence can be still included in evidence that should not be excluded. So the appellate court did misapply Gervaisi and created a slightly different standard than what the Gervaisi standard really stands for, which was evident not long after the third district ruled a different panel in the third district, and people v. Harris effectively overturned the ruling in the instant case by expressing the fact that Gervaisi was not an independent source. They were actually stating that they did not agree with the ruling in the instant case, and it was a very similar set of facts, and they stated that it was because of the illegal taint, it was not an independent source, and they ruled differently. Ms. O'Neill, does that mean that under Section 4-5, a but-for test is there, that is, any evidence that would not have been obtained but for the illegal eavesdropping activity must be suppressed? I wouldn't say that it's a but-for test. It's more of the true test is, was there an independent source other than the illegal nature or the violation, in this case, of the statute? If there was an independent source, if there were previous conversations, if there was a previous investigation, and you have a violation of the Illinois eavesdropping statute, and you have this recording, then if there was a previous conversation, much of the information that may have been gathered during the violation of the Illinois eavesdropping statute, in this case, the testimonies, of a witness that was there that witnessed the actual conversation, then more than likely that witness's testimony would be admissible, because there was already an investigation, it was already a basis for some of the conversation and so forth. So it's not so much a but-for test as opposed to an independent source test. Counsel, if there's nothing wrong with going up and talking to somebody, and if an informant or a police officer goes up and talks to somebody out of the blue, and they work out a drug transaction, that testimony would be admissible without a prior history or prior investigation. Is that correct? That's correct. If an individual, a confidential informant, walks up to someone and starts a conversation, and they enter into a drug transaction, and then they go back to law enforcement and say, hey, look, I just talked to this person, I just bought drugs from this person, here are the drugs, I just gave them the marked money, that testimony would ordinarily be admissible. But the salient difference is when an individual has a hidden recording, and they actually record someone's conversation unbeknownst to them, they're committing a crime. It's a crime, unless it falls within the exemption of the Illinois eavesdropping statute. And the eavesdropping statute lays out how to fit within the exemption, meaning prior approval from the state's attorney. And it's not just prior approval. The law enforcement agency has to call the state's attorney, and they have to give them information to let them know why they think there's probable cause to believe that this person is in the process or will commit a crime that falls within the exemption status of the state's attorney. And then they have to receive approval from the state's attorney. Now, the approval can be verbal, but the approval has to be memorialized within three days of the actual event, and that memorialization has to be filed with the clerk. And that's just to make sure that this was done in a timely fashion. So in this situation, the reason why it should be suppressed is because violating the statute, you're violating the express wishes of the General Assembly, and the General Assembly passed that statute in order to protect the privacy of citizens. And in this situation, to protect the privacy of citizens from law enforcement just randomly choosing people and recording their conversations, and then deciding later if, okay, well, yes, I found evidence of a crime, and therefore I'm going to prosecute you, or maybe, okay, no, there isn't evidence of a crime, but you've already violated their privacy. There's a reason why when you have any type of invasion into the privacy of a citizen, there's a requirement by the government, a limitation to the government, of requiring some level of probable cause, of some level of saying, hey, well, what's your basis for invading this person's privacy? And the Illinois eavesdropping statute, they're looking at the plain language of the statute. The statute mentions recording communications, intercepts, but when it comes to suppressing the evidence, it says all evidence. It doesn't say, okay, if you violate the statute, you're going to you are to suppress the audio recording or just the intercepts. It says all evidence, which makes it clear that, one, they wanted limitations on the government to be able to go and eavesdrop on someone, and, two, it makes it clear that if those limitations are violated, that there is a remedy, a strong remedy, to discourage the violations. That's the reason for, in the eavesdropping statute, saying all evidence is to be suppressed. Can I ask you a question? So I understand the legal framework of your argument here. Are you arguing in terms of a Fourth Amendment violation? Where is the seizure? Where is the search? Or are you arguing that the evidence should be suppressed because of the violation of the statute? Is it a constitutional argument or is it a statutory argument? It's a statutory argument, although I believe that the General Assembly, maybe their motivation for the statute is a privacy constitutional basis, but this is a statutory argument. You're not saying that we have a sliding scale on privacy rights. If let's say that your client, they had a couple undercover buys into him already and then this happened and it was clearly a violation of the eavesdropping law, because of the independent source, your argument is that this would then be, it wouldn't be admissible, the recording wouldn't be admissible, but the testimony would be admissible because they had this independent source as opposed to just walking up to your client randomly? No, I'm not arguing a sliding scale, but what I am arguing is that in a situation where if there were previous undercover buys and this confidential form had done undercover buys before and then there was a violation of the third undercover buy, clearly the recording, the auto recording is not admissible. I would also argue the video recording is not admissible. The State would have a stronger argument for why the confidential form is testable would be admissible. I would still argue that it isn't admissible, but I would concede that there would be a weaker argument in that situation for why the confidential form's testimony would not be admissible. But it's not a sliding scale. The gravamen of my argument is that the reason why the video and the confidential form's testimony is not admissible is because there is no, there was no independent source, there was no independent investigation, and this is squarely within the gravamen of what the Illinois eavesdropping statute was passed to prevent, and that is the law enforcement randomly violating the privacy of citizens in order to do some type of phishing expedition to see if they're going to find some evidence of some crime, but they don't even know if it's even being committed or if the person's committing it. Well, I see my time is nearly up, so I would reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Dupree. Mr. Rohler, for the affilee, you may proceed. Thank you, Your Honor. May it please the Court, opposing counsel, my name is Nick Mohler of the Attorney General's Office on behalf of the people. I'd also like to start with what happened at the beginning of all of this. The confidential informant walked up to defendant on a porch, an act that is not illegal, it's not unconstitutional in any way. He proceeded to have a voluntary conversation with the defendant. Again, an act that is not illegal, it's not unconstitutional in any fashion. He also recorded that conversation by a video device. That is not illegal. It's not unconstitutional in any way. The only illegal action was based upon the recording of the oral communications, the audio recording. And again, this is not a constitutional infraction. This is purely a creature of the statute. On the constitutional level, because defendant was generally in a public place, but more because he was speaking to someone voluntarily, he abandoned any privacy rights from the constitutional side because he was telling the defendant or he was telling the confidential informant, showing the confidential informant his actions, and therefore he had no constitutional privacy right. That is at issue here. It all comes back to what does the statute say. And the statute says you cannot record, you cannot secretly record someone's oral communications. The State has never argued that there was not a violation here. The State has never tried to get the audio recording in. It has always recognized that this was a violation and that under Section 14-5 of the statute, it is not permissible. Now, 14-5 has two ways to bar evidence. The first is for a direct violation. In this case, that would be the audio recording. The act, the illegal act produced that evidence directly, and so that is barred by the statute. But this Court has also held that 14-5 incorporates the fruit of the poisonous tree. And that is the part that is the only part that's been raised to this Court and below, the question of whether these two pieces of evidence, the informant's testimony and the video portion of the recording, if those are fruit of the poisonous tree. And they're not. As to the confidential informant's testimony, Gervaisi is directly on point. And there's really nothing to distinguish Gervaisi from this case. Gervaisi was not focused on was there an independent investigation when it was talking about the officer who was part of the conversation, his testimony. Gervaisi only asked where did the officer's knowledge come from, because that's what the fruit of the poisonous tree test is about. What is the ultimate source of the evidence? In Gervaisi, the Court said you have a police officer having the conversation and you have a court reporter listening in through an eavesdropping device. The officer, he can testify because his knowledge is based on participation, not the violation. The court reporter only knows about the conversation, the contents of the conversation, because he or she was listening in. She only knows based upon the eavesdropping, and therefore, that testimony is out. In this instance, in this case, the confidential informant knows about what happened, what he saw and what he heard in the conversation, because he was there to hear and see it. He did not use the eavesdropping device in a fashion that gave him knowledge. His mere participation did. In a similar fashion, the video recording is not derived from the audio recording, the illegal portion, in a way that would bar it under the fruit of the poisonous tree. Defendant has said they're not asking for a but-for test, but really all they've done is renamed the but-for test as this independent cause test, because they are saying because an illegal action took place, everything else happening around that action is now out. Defendant basically gets a carte blanche for any activity he did because of one discreet violation by the State. But, Mr. Mohler, the video is direct to the conversation. It's not everything around it. It's just direct line. Yes, Your Honor. But the — it does not directly violate the statute, if I believe — if that is the — But it is a but-for, but for him to be under — the informant talking directly to the defendant about some illegal activity that — and it's videoed at the same time. I think there — from one aspect, I don't believe it's the — the violation itself, which the State — the State believes is just the recording of the audio portion. That is not necessarily a but-for cause of the video recording, because if the device had been broken and the microphone wasn't working, if the device had been two devices just based on the way it was configured, the video still could have recorded, and that's not a but-for cause. If we're saying the but-for cause is he would not have walked up and had the conversation if he didn't have the audio recording. That, I would concede, is a but-for cause, but the reason that defendant is trying not to use the phrase but-for is because both this Court and the United Supreme Court have already said but-for is not the test we're using. The test under the fruit of — of the poisonous tree set forth in Wong by the United States Supreme Court and adopted by this Court is did the police exploit the — the illegality? Did the police use what they learned from the illegal action to get more evidence? And that's not what happened here. No one had seen — no one had heard the audio recording before the video recording was taking place. Nothing they learned from the illegal audio recording was used by the police, because from the very beginning, they knew that the confidential informant had made a mistake and they could not use that information. Because that's what the test is for fruit of the poisonous tree, the inquiry ends there. It's just not — the fruit of the poisonous tree is not indicated in this instance because there's no causal relationship between the illegal recording and the video recording or the confidential informants. I want to ask something that's a little different than the way the analysis has gone on for a long time, separating out the eavesdropping, the oral communication, and the video. But in a way, all communication is both visual, about the facial expressions and all that, and the speech itself, both things. And so does the eavesdropping statute, would that really cover both things? I know that traditionally the courts have separated this out, but in a way, we understand what is said by the facial features and other — that communication, the non-oral. Yes, sir. Isn't that right? Yes, but — well, I agree that communication has different components. The answer I would have is, one, I don't think that distinction matters for the informant's testimony, and so I think that just to make sure I'm confining, that would be a concern about the video recording. And the reason we do not have to separate out what communication means in this instance is because we're talking about statutory interpretation, where the legislature has actually provided us the definition. So the violating activity is the secret recording of a private conversation. And that term, private conversation, is defined as oral communication. So the legislature did make clear what type of communication it was talking about, and that was purely the oral part, which the State's reading would mean what is actually spoken, not any body language or other communications that could also be — that would be recorded by a video recording as opposed to the audio portion. And so what it comes down to is, what's the purpose of the statute? Because we're not talking about constitutional privacy. The only source of a privacy right here is the statute itself, and the legislature was very clear in laying that out, what it was protecting. It talked about eavesdropping devices, which, outside of e-mail, which is not implicated in this case, it defined an eavesdropping device as something that can record oral communication. It said it's protecting private conversations, which, again, confined what was being protected to oral communications. And therefore, the legislature only intended to protect oral communications. That means that the only thing obtained in violation of the statute are the recorded oral conversations. Defendant keeps bringing up that the statute mentions any evidence. And it's important to point out that that's cutting off what the statute says, because the statute says any evidence obtained in violation. The — it would be a different argument if we were asking whether video recordings can always come in as a category. That's not what the State is asking, because, of course, if a separate video recording had been taken based on knowledge gained through illegal wiretapping, through the oral recording, and that's how they knew to videotape someone somewhere else, that would be barred by 14-5. That's not what we're arguing. The aspect isn't what type of evidence it is. It's where is this evidence coming from. That's what Gervaisi said. That's what the United States Supreme Court said in its Fruit of the Poisonous Tree cases. And so that is the question here. So, again, when it comes down to the actions, the police didn't even have to be confidential informant. A police officer could have walked up to defendant, could have had a discussion with him. That doesn't even — it doesn't even raise concerns beyond constitutional and privacy matters. This defendant was out in a generally public place. He was on a porch where anyone could have seen him, and decided to have a conversation with the informant who approached him. There was nothing wrong about that. The recording of what he did by video, there is no source of a protection there, because, again, he's out on a public porch. He's out on a porch in view of the public. The video recording is only recording what anyone on that street could have seen. The only thing that violates the statute, the only thing that comes from the illegal actions is the audio recording. And, therefore, under the statute, under this Court's precedent, and under the United States Supreme Court precedent, the audio is the only part that isn't admissible. So I'm not — But the informant targeted this particular defendant and walked up on the porch to talk to him with the recorder on him. So, I mean, it isn't just, oh, by chance he happened to talk, wanted to talk to him. No, he intentionally went up the steps to talk to him to record him. And, Your Honor, I don't think that would change the — it does not change the constitutional analysis. It doesn't matter if a police officer goes up to talk to you intending to get information. Where there — and, of course, we're not in an area where there's a stop. With an illegal recorder. Right. The illegal recording is still the only illegal part. And the State has never argued that that was legal. The State acknowledges that because the confidential informant acted in a way not intended or likely anticipated by the police officers, there was this violation of the eavesdropping statute. However, the conversation itself was not violative of any constitutional or statutory law. And that's why the conversation should come in. The video recording is not — It was a collection of evidence obtained through use of unlawful means. The eavesdropping was unlawful. Yes, Your Honor. But the evidence of the purported testimony — or, I'm sorry, the proposed testimony and the video do not stem from that illegal — the illegal action is not the approaching with a wiretap. You can walk with an eavesdropping device. Owning the eavesdropping device, possessing it, none of that is actually illegal. It's just the actual use in recording a private conversation. So that is the only part that is illegal, and it is only things that causally stem from that, that are barred by 14-5. And I think it's important to note — Well, the subject — the person they taped and the person they videotaped was not the approved target of this whole investigation, right? Yes, Your Honor. And that is why the audio recording cannot come in, because in order to get the type of approval for eavesdropping that is at issue here, you need to specify an individual. That is true, but it does not — it does not have any causal relation to the video recording or the conversation, which is the test that has been set forth for Fruit of the Poisonous Tree. I would — If the defendant was not the targeted individual, why isn't that an improper use of this overhear device? It is, Your Honor. Because they're connected. You have audio and video. He was directed to go and target a specific individual. That's not what he did. Yes, Your Honor. So in the first instance, the confidential informant didn't do what the police wanted him to, which — Well, what the order permitted him to do. Right. So what happened was illegal. The eavesdropping through the recording of a private communi — sorry. The recording of a private conversation secretly, which means an oral communication, that was illegal. That was wrong, and that's why it's barred and why the confidential informant subjected himself to potential punishment through the prosecution of a felony. But the question here isn't did the confidential informant do wrong. It's what are the repercussions of that wrong. The statute lays it out. There's the possible felony prosecution. And any evidence he got that was in violation of the statute is barred. The violation of the statute is that he recorded an oral conversation, so that recording cannot come in. And that is the way Gervaisi looked at it. But he also recorded some images. He also recorded images. But those — the recording of images does not violate the Act. And that is why 14-5 doesn't apply, because it says the things that are — the things that are barred are the things that violate it, what was obtained in violation. So if we rule the way you would desire that we would rule, in the future, the state's attorney's office, the police, can obtain permission to do an e-stalking on a certain individual. And in that group of individuals, maybe they see in a crowd, they don't see that individual, but they've got all the devices already. So they go to other people that are potential targets of future investigations. And so then it's okay for them — the eavesdropping stuff is out, but it's okay to keep all the video — I would — — in the future. In other words, that could be a procedure then for law enforcement, right? If you're missing the one you're after, then you can't use the eavesdropping, but you can use the videotaping for any of these other individuals that perhaps could be targets. I think there are two responses, Your Honor. The first being, if you don't have the audio recording in that scenario, if you're just going out random anyone in public with a video recording, that is fine under Illinois law. So the question then just becomes, so the only thing they're doing that's wrong is recording audio. And we are saying, you can't use the audio. So as a motivation, I don't know that I see any motivation for the police, because if the only thing they can't do is the audio, and we're saying — and the State's position is that you can't use the audio, and you can't use the audio to then find anything else, there's no actual incentive for them to use the audio in the first place. That's why I think if you look at this — But they're going to use the video. Right, because I think the alternate incentive would also be just send them out with a video camera, because that's not illegal. That doesn't violate anything. I don't think there's any motivation to do anything illegal there, because they're not gaining anything from the illegal portion of that. So there's nothing to spur them to go beyond what they're allowed to do, because they literally get nothing from it besides what they could have gotten without doing the illegal thing. And the second part at problem with that is that 14-5 isn't the — isn't the punishing part of this statute. 14-5 is not there to deter people specifically from going out to do this. This is a criminal statute. Anyone who goes out and does what Your Honor is describing is on the hook for a potential felony prosecution. And so if it's a case where it's in bad faith, that's likely going to lead to a felony prosecution. In this case, I can't say whether — whether it would have based on what seemed to be an inadvertent nature of it. But if it is this type of targeted or this type of coordinated effort that was imagined by the defendant in his brief or by Your Honor's hypothetical, that is punishable under the law, and there's no reason to believe it wouldn't be. And so the — 14-5 is not the only motivating factor of the eavesdropping statute. And I don't think it's even the most powerful. The felony is the most powerful motivating factor. 14-5 is an exclusionary rule. And courts have always held that an exclusionary rule has to be narrowly tailored, has to be as — it has to be read as — used as little as possible, because what we're doing is we're giving defendant a carte blanche. We're saying the police made a mistake. They are already being punished for it in that they can't use the — the games. But the rule put forth by defendant would then say, but anything that happened while that recorder was on, you now can't be touched for. The conformant can't say anything. If it was recorded, that can't be used. Excuse me. I know your time is up, but I just want to — but the thing is that this defendant was targeted by the police, and it just was by chance or mistake on behalf of the informant that they couldn't use the audio. But they did gain by it because they had the audio on, and so, consequently, you're arguing that they did gain by using the video. The video would never have occurred but for the illegal audio. And if I may briefly respond, Your Honor, at first, I'm not — the but-for cause does not come into it because the Court has already rejected that, both this Court and the United States Supreme Court. The test isn't but-for. It's did you specifically use what was gotten by illegal means to get this new evidence. As to the second part, the targeting is not what's illegal here. The targeting did not violate any privacy concerns. The walking up to them did not. And so I don't see the relevance of whether it was the targeted individual or not, other than we wouldn't be here if the targeted individual was home because then the approval would have been valid and everything would get in without any question. So unless — with my time up — Any other questions? All right. Thank you. If I may briefly — we would ask that you affirm the judgment of the appellate court reversing the circuit court. Thank you. Thank you, Mr. Miller. Mr. Beals? Please, the Court. I just wanted to address a few things in rebuttal. First and foremost, the State mentions that the strongest prohibition in the statute is a felony prosecution. With all due respect, that's just not — that's just not dealing with reality. You have a law enforcement agency that works with the State's attorney's office to do investigations into crimes. You have a confluence informant that's working for the law enforcement agency. There's no question that the Illinois eavesdropping statute was violated, meaning that that is a commission of a felony. Now, I'm sure it does not surprise the Court that that confluence informant has not been and will not be indicted for a felony in this case. It is unlikely in situations like this that if you had a confluence informant or a member of law It's just not — that does not happen, and I'm not aware of that ever happening. And I doubt 21 years of practicing law. I've never seen it. And if the Lord blesses me with 21 more years of practicing law, I doubt that I will see it. So that's just — that's — in reality, that's not a reasonable expectation of what would happen. And thus the reason for the Fruit of the Poisonous Tree doctrine that is embedded within the Now, the standard of exploiting the violation, that's, you know, the standard looking at was the evidence obtained by exploiting the statute? And in this case, the Illinois eavesdropping statute. In this case, in the instant case, that's what happened. There was — there was — it wasn't as if the confluence informant had already spoken to my client, even knew my client, even knew of my client. The confluence informant had a mission, and that was to go and get evidence on the expressly approved target. That target wasn't there, so the confluence informant figured, hey, any old person will do, and he approached my client. That's an exploitation of the statute in this case, because the confluence informant knew that he had a recording device on, and he started speaking to my client. He started a conversation with my client. Now, the state says that — I guess I'll kind of talk about the difference between a statutory analysis and a constitutional analysis, because it sounds like we're kind of mixing up the ideas a lot, talking about fruit of the poisonous tree, which arises from Hong Song and Fourth Amendment cases. We're talking about these other ideas that seem more familiar to us in a Fourth Amendment discussion. As you point out, we're talking about statutory interpretation, analysis of the statute itself. And my questions are about how you, as I say, could import into the statutory language this Fourth Amendment ideas. When the legislature created a statute and said that it is a — violates the statute, when the person intentionally used an eavesdropping device in a surreptitious manner to record all or part of a private conversation without the consent of all parties to the private conversation. That's the focus of the statute, recording a private conversation, right? And then the next sentence is, any evidence obtained in violation of this article is not admissible in any civil or criminal trial. Now, it would appear that the — this exclusion of evidence is — the statute limits that to any evidence that was obtained in violation of the statute. And that violation of the statute is recording of oral conversations. How do we get into the — all these other concepts that are more grounded in the Fourth Amendment world of constitutional law? Can we just be focused on the conversation itself and its admissibility? Well, I think we should be focused on the plain language of the statute. The statute says it's a violation to stereotypically record someone's conversation without their knowledge and consent. And when an individual does that, that means they violate the statute. And any evidence obtained in violation of the statute is not admissible. In this situation, the evidence that was obtained is the audio recording, the video recording, and the confidential informant's testimony. But the video recording and the testimony of the informant as to what took place, that wasn't in violation of the statute. No, but the audio recording was. And that's — and looking at the plain — You're asking to exclude the video testimony — the video recording and the testimony of the person who was involved in the conversation. Those pieces of evidence were not obtained in violation of the statute. Well, Your Honor, I would respectfully disagree in that situation. They were obtained. They were obtained while you were violating the statute. The confidential informant received the information while violating the eavesdropping statute. From the point that the confidential informant approached my client and started a conversation where my client responded and it was being recorded, that was a violation of the statute. So everything from the point that my client's voice was recorded on the recording device is a violation of the statute. And everything that goes after that is a violation. So the audio recording, the video recording, and the confidential informant's testimony are all violations. Well, they're all derived from that initial violation of the actual statute. And looking at the plain meaning, the legislature had the opportunity, say, to suppress the recordings, to suppress the intercepts, to suppress the communication. The legislator made it quite clear, said all evidence, meaning anything connected with the violation. In this case, it's the informant's testimony as well as the video evidence. Was the audio and visual recording in one device? Yes. It was one device. So the defendant would have known that somebody was using their iPhone and using a recording or in a public place or anything like that. It was hidden. It was a hidden device and it was one device. The audio video was one device. And that's correct. If the confidential informant shows up with his phone and he's like, hey, can I buy some drugs from you? Well, you know, my client would have been quite clear as to what was going on and my client would have had the opportunity to act accordingly. Counsel, the randomness of your client's involvement here, that really has no effect on this. Let's assume for a moment that the CI did not have any type of device on. There's nothing wrong with him walking up to your client and engaging him in this discussion, correct? No, there's nothing wrong with it. And if he had been wearing a or somehow equipped with a video device, no audio, video, there would be nothing wrong with that, correct? There would be nothing illegal with that. That is correct. But in this situation, as the State mentioned, it says, well, walking up to my client was nothing wrong, nothing illegal. Speaking to my client was nothing illegal. But the thing is, walking up to my client, knowing that he had the device to record my client's conversation, and once my client's conversation started to be recorded, that was illegal. It's the same thing as if a police officer believes a person or thinks a person, not even sure if a person committed a crime, and he goes up and pulls a gun on you and says, hey, empty your pockets. Let me see everything you have on you. And he takes what's taken from your pockets. You know, that can be considered a robbery attempt. That's a felony. No one's going to say that, you know, there's nothing illegal with an officer doing that. Of course that's illegal. In this situation, the constitutional informant violated the law in order to get the information. And I see my time is up. Thank you, Mr. Nielsen. Thank you, Your Honor. Case number 126435, People of the State of Illinois v. Lavelle Davis, will be taken under advisement by the court, known as Agenda Number 9. Thank you, Mr. Beals, and thank you, Mr. Mohler, for your arguments this morning.